**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CLEVERN GRANGER**                              **CIVIL ACTION**

**VERSUS**                                        **NO.  12-2342**

**STEVE RADER, WARDEN**                           **SECTION "R"(4)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    State Factual and Procedural Background

The  petitioner, Clevern Granger ("Granger"), is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On March 31, 2009, Granger was

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

charged by Bill of Information in Jefferson Parish with one count of aggravated burglary and one count of forcible rape.[3]  Granger entered a plea of not guilty to the charges on April 1, 2009.[4]

The record reflects that Granger and the victim, N.B., are natives of Trinidad, where they met and were married in February of 2000.[5]  The couple moved to New Orleans in November of 2001 and had two children during their marriage.  N.B. described their marriage as "rocky," with both verbal and physical abuse inflicted upon her by Granger.[6]

The first incident of physical abuse occurred in 2004 when they had a physical confrontation over bills and Granger's extramarital affair.  During that incident, Granger placed a chair over N.B.'s neck, and when he moved the chair, "he came down on top" of her, and "slapped [her] around."[7]  As a result, N.B. suffered injuries to her back, chest, and neck.  She did not report the incident to the police for fear that Granger would hurt or kill her.  Granger told N.B. that, if she ever went to the police, he would "finish what he started."[8]

Six months later, Granger engaged in another physical altercation with N.B. where he slapped her across the face after she asked him if they could take their daughter out to celebrate her graduation.  N.B. changed residences several times to distance herself from Granger, but he would find her and continue the physical and verbal abuse.  Several years later, in May of 2008, N.B.

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 3/31/09.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 4/1/09.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Granger*, 103 So.3d 576, 578-83 (La. App. 5th Cir. 2012).

[6]*Id.* at 578.

[7]*Id.*

[8]*Id.*

obtained a restraining order against Granger. Despite this, he continued to harass and abuse her. N.B. moved to five different residences to avoid Granger, but he always found her.

By December of 2008, N.B. and Granger were divorced, and N.B. moved into an apartment located at 937 West Monterey Court in Gretna, Louisiana. Granger was not on the apartment lease and did not have a key to the apartment. Despite the finalization of their divorce, Granger continued to show up at N.B.'s home and place of employment.

On December 29, 2008, N.B. called the police to report an incident which began the previous evening when Granger spent most of the night banging on her windows and doors. Granger turned off the electrical power to her apartment and refused to leave. Jefferson Parish Sheriff's Deputy Gerald Favaloro responded to the call and met with N.B. whom he found to be scared. Upon learning of their divorce, and after Granger refused to provide the officers with his identification, Granger was again asked to leave the property. When he refused, Deputy Favaloro and the other officers on the scene attempted to handcuff Granger. They initially were unsuccessful when Granger pulled his arms away and began swinging at the officers. Deputy Favaloro sustained scratches to his arm during that time. Eventually, the officers were forced to use pepper spray to retrain Granger. As a result of the incident, Granger was arrested for trespassing, staying after forbidding, resisting an officer, and battery on a police officer.

Another incident took place between Granger and N.B. on March 1, 2009, when Granger's sister-in-law asked N.B. if she could have Granger watch the children while N.B. was at work. N.B. agreed, but when she arrived home that evening and asked Granger to leave, he refused. He finally left after N.B. gave him $20. When N.B. finished preparing for bed that evening, however, she

found Granger hiding behind a door in her apartment.  He was wearing white gloves and had a machete with him.

N.B. screamed but Granger covered her mouth with his hand, told her to "shut up," and began hitting her as he held her down on the floor.[9]  The fighting continued throughout the night and into the next morning until Granger permitted N.B. to go to work on the condition that she would not tell anyone what had happened.

N.B. later called the police to report the incident.  She told the 911 operator that Granger beat her up and threatened to kill her if she told anyone about the incident.  She further told the operator that Granger was stalking her, calling her phone at all hours, and had even broken into her house, beat her up, and threatened to kill her if she told anyone.  N.B. stated that she felt like she was under house arrest in her own home and that she needed all of the help she could get.

Deputy Marvin Cephus of the Jefferson Parish Sheriff's Office responded to the call of a domestic disturbance.  N.B. told him that Granger had been following her.  She reported that, on this occasion, he entered her home without her knowledge and was found standing in a corner behind a door wearing latex gloves.  N.B. also told Deputy Cephus that the restraining order she had against Granger had expired.

A few days later, on March 6, 2009, N.B. returned home from work when she noticed that her trash was "all over the place."[10]  Fearing that someone had been at her house, she asked her friend to walk through the house to make sure there was no one inside.  After checking the house and finding it to be empty, her friend left and N.B. entered her house.  As she did so, Granger

---

[9]*Id*. at 580.

[10]*Id*.

jumped out from behind her carrying a blunt object in his hand.  He pushed N.B. to the floor, put one hand on her mouth and another around her neck, and placed his knees on her chest, making it difficult for her to breathe.  Granger then laid on top of N.B. and pushed the blunt object into her throat.  When she attempted to escape, the fight escalated and she was pushed against the wall. Granger threatened to kill her.  Granger told N.B., "I'm going to kill you, I'm going to kill you, this what you going to do to me? . . . I'm going to get what's mine, I'm going to get what I came here for.  You're my property, you're giving it to everybody else.  You're like a little slut . . ."[11]  Granger then tore her pants off, pushed her onto the bed, and engaged in sexual intercourse, and later oral sex, with her.  N.B. resisted but was unable to stop him.  At one point, she tried to hit Granger with a heavy vase, but he caught her and beat her again.

The next morning, N.B. pleaded with Granger to let her go to work.  After finally agreeing, he took her keys and told her that he would be waiting for her when she got back.  N.B. went to work and she did not immediately go to the police station to report the crime out of fear.  Her co-workers recognized that something was wrong and one of them performed N.B.'s daily job duties due to her state.

Having consulted a friend, N.B. went to the police station after work and reported the incident to Jefferson Parish Sheriff's Deputy Dwayne Rullman.  N.B. told him that, around 7:30 p.m. on the night before, Granger had confornted her from behind, pushed her into her house, and laid on top of her.  She explained to Deputy Rullman that while he was on top of her, Granger beat her up, put her on the couch, and would not let her leave.  She also told Deputy Rullman that, the next morning, Granger told her he was going to rape her and ripped her clothes off.  She screamed and

---

[11]*Id.*

pleaded with Granger.  She eventually told him that the least he could do was put a condom on if he was going to rape her, and Granger complied.  She further told Deputy Rullman that around 5:00 a.m., Granger allowed her to get dressed for work, where she had been before going to the police station to report the incident.

Deputy Rullman noticed marks on N.B.'s chest area and bruises and scratches to her lower jaw area.  She also told him that she had pain in her right arm and lower back and numbness in her neck.  Deputy Rullman requested that Crime Scene investigators and additional deputies be dispatched to her home.  N.B. gave the officers a description of Granger and signed a consent to search form to allow the officers to enter her home.

Upon arriving at her home, Jefferson Parish Sheriff's Deputy Eric Blanford through a window saw a man fitting Granger's description.  Granger answered when Deputy Blanford knocked on the front door.  Deputy Blanford identified himself and advised Granger that he was being arrested.  Granger backed into the apartment and locked the door.  Deputy Blanford was forced to kick down the metal screen security door of the apartment.  Once he was inside, Granger resisted him by pushing the deputy off in an attempt to evade arrest.  Deputy Blanford was forced to use "OC spray" to detain Granger.

At the home, Sergeant Rodney Naumann of the Jefferson Parish Sheriff's Office Crime Scene Division located a pair of shoes with the sole removed and a torn black top.  He found a pair of torn blue pants that had been thrown in the trash.  He also located a condom wrapper in the bathroom trash can.

After being found competent to proceed,[12] Granger was tried before a jury on March 16 and 17, 2011, and was found guilty as charged of aggravated burglary and forcible rape.[13]  On August 29, 2011, the Trial Court denied Granger's motion for a post-verdict judgment of acquittal, and sentenced him to serve 30 years in prison at hard labor on each count, concurrently, with the first two years of the sentence for forcible rape to be served without benefit of parole, probation, or suspension of sentence.[14]  The Court also issued a permanent order for Granger to stay away from N.B. pursuant to the Louisiana Uniform Abuse Prevention Act.

On September 27, 2011, the Trial Court denied Granger's motion for new trial.[15]  The Court also granted Granger's motion to withdraw counsel and to appoint counsel for appeal, which the Court later construed as a motion for appeal.[16]  In so doing, the Court denied as moot Granger's *pro se* filed request for writ of habeas corpus for lack of jurisdiction and his application for post-conviction relief seeking an out of time appeal.[17]

On direct appeal, Granger's appointed counsel argued that the Trial Court erred in admitting other crimes evidence that was prejudicial and not probative.[18]  Granger also filed *pro se* five

---

[12]St. Rec. Vol. 1 of 6, Hearing Minutes, 2/2/11; Hearing Minutes, 1/9/11; Hearing Minutes, 5/5/10; Hearing Minutes, 4/29/10; Hearing Minutes, 7/15/09; Motion to Appoint Sanity Commission, 6/27/09.

[13]St. Rec. Vol. 1 of 6, Trial Minutes, 8/16/11; Trial Minutes, 8/17/11.

[14]St. Rec. Vol. 1 of 6, Sentencing Minutes, 8/29/11; Motion for Judgment of Acquittal, 8/29/11; St. Rec. Vol. 5 of 6, Sentencing Transcript, 8/29/11.

[15]St. Rec. Vol. 1 of 4, Trial Court Order, 9/27/11; Motion for New Trial, 9/23/11.

[16]St. Rec. Vol. 1 of 4, Trial Court Order, 10/21/11; Trial Court Order (2), 9/27/11; Motion to Withdraw and to Appoint Counsel, 9/23/11.

[17]St. Rec. Vol. 1 of 4, Trial Court Order, 11/3/11; Trial Court Order (2), 10/21/11; Uniform Application for Post-Conviction Relief, 10/19/11; Writ of Habeas Corpus, 9/28/11.

[18]*State v. Granger*, 103 So.3d at 583; St. Rec. Vol. 5 of 6, Appeal Brief, 12-KA-0193, p. 7, 3/26/12.

additional errors:[19] (1) the State's "motion of intent to use other crimes evidence" contained false allegations and constituted inadmissible hearsay; (2) the evidence was insufficient to support the verdict where the testimony was inconsistent and false and should not have been found credible by the jury; (3) counsel provided ineffective assistance for failure to raise the falsity of information provided by the State during discovery; (4) the district attorney and other officials involved in the case had personal interests and motives in the outcome of the case and the judge and prosecutor failed to follow the law and failed to investigate the issues of the case; and (5) the Trial Court did not have lawful authority over him or the victim who were from another country.

On October 31, 2012, the Louisiana Fifth Circuit affirmed the convictions and sentences.[20] The Court found no merit in Granger's claims of insufficient evidence and inadmissibility of the other crimes evidence.  The Court further found that Granger's *pro se* claim that the State's other crimes evidence contained false and hearsay statements was procedurally defaulted for lack of a contemporaneous objection under La. Code Crim. P. art. 841, and alternatively, the claim was otherwise meritless.  The Court also resolved that Granger's claims of ineffective assistance of counsel claim, biased prosecutor and judge, and lack of jurisdiction were not properly briefed and were considered abandoned pursuant to La. App. Rule 2-12.4.  The Court also noted that, in the alternative, the ineffective assistance of counsel claim would be better pursued on post-conviction review.

---

[19]*Id*. at 583; St. Rec. Vol. 5 of 6, Supplemental Appeal Brief, 12-KA-0193, 5/3/12.

[20]*State v. Granger*, 103 So.3d at 576.

On November 28, 2012, Granger submitted a writ application to the Louisiana Supreme Court raising the following assignments of error:[21] (1) the Trial Court erred in admitting other crimes evidence that was prejudicial and not probative; (2) the Trial Court erred in allowing other crimes evidence where the trial witnesses and the victim committed perjury during their trial testimony; (3) the Trial Court erred in allowing the prosecutor to present false and altered police reports; (4) counsel was ineffective for failing to raise the perjury issue; (5) the Trial Court erred in presiding over the trial where the court had lost jurisdiction and had no authority over him or the victim as foreign nationals; (6) the judge and prosecutor had personal interest in the outcome of the case; and (7) the State failed to prove all elements of the crime charged.  The Louisiana Supreme Court denied Granger's writ application without stated reasons on April 16, 2013.[22]

Granger's conviction and sentence was final 90 days from that date, or on July 15, 2013, when he did not file a writ application with the United States Supreme Court before that date.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

## II.    Federal Petition

On September 26, 2012, the clerk of Court filed Granger's federal petition for habeas corpus relief.[23]  Construing his *pro se* pleadings broadly, Granger appears to raise the following grounds

---

[21]A copy of the writ application has been separately filed into the record.  The writ application was signed by Granger on November 28, 2012, postmarked November 30, 2012, and filed on December 4, 2012.

[22]*State v. Granger*, 112 So.3d 840 (La. 2013).  The Louisiana Supreme Court writ application was signed by Granger on November 28, 2012, postmarked November 30, 2012, and filed on December 4, 2012.

[23]Rec. Doc. No. 1.

for relief:[24] (1) the evidence was insufficient to convict him because the testimony at trial was false and not credible; (2) there was no probable cause or investigation to support the complaint or the charges against him and the entry into the family residence was illegal and made without a warrant; (3) the prosecutor, the state trial judge and the appointed defense counsel knew of the lack of probable cause and relied on false police reports in the illegal prosecution and obtained a conviction based on perjured testimony and prejudicial remarks by the prosecutor, to which counsel failed to object; (4) the state courts wrongfully denied him relief from the errors in his prosecution as a result of judicial bias which renders his conviction void; and (5) he was denied due process and equal protection of the laws because he is a foreign national.

The State filed a response in opposition to the petition arguing that Granger did not exhaust state court remedies prior to filing his federal petition because his direct appeal was pending in the Louisiana Fifth Circuit at that time.[25]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to this petition, which is deemed filed in this Court no later than November 25, 2011.[27]   The threshold questions in habeas review under the amended statute are

---

[24]*Id*. at 6-10.

[25]Rec. Doc. No. 3.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As noted above, the State raises Granger's lack of exhaustion due to his then-pending direct appeal. The State has not supplemented its response since the subsequent rulings were issued on Granger's direct appeal and the related writ application. The State also did not include in its response which claims it recognizes Granger to have raised in his federal petition as compared to those presented to the state courts.

Nevertheless, although Granger's appeal and subsequent writ application have been addressed by the state courts, the record demonstrates that he still has not exhausted state court remedies on all of the discernable issues raised in his federal petition. The Court therefore modifies the exhaustion defense raised by the State to include the following grounds for his failure to exhaust. *Accord*, *Magouirk v. Phillips*, 144 F.3d 348, 350, 360-61 (5th Cir. 1998) (discussing notice and an opportunity to respond to a procedural default including failure to exhaust raised by the court).

---

(5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Granger's federal habeas petition on September 26, 2012, when pauper status was granted. Granger originally submitted a hand-written pleading entitled "Writ of Habeas Corpus" (now attached as a brief in support of the form petition) which was signed by him on November 25, 2011, and received by the clerk of court on December 16, 2011. The records of the clerk of court reflect that Granger was notified that the pleading was deficient in form and lacked a filing fee and pauper form. After receiving no response and sending multiple follow-up letters, Granger finally submitted the proper form and pauper application on September 21, 2012. In spite of his lengthy delay in correcting the deficiencies, the date of his signature on the original submission is the earliest date appearing in the record on which he could have delivered the original pleadings to prison officials for mailing to the Court. *Accord Spotville*, 149 F.3d at 376-78.

IV.   **Exhaustion Requirement**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court.  *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  This means that "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."  *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  Furthermore, a prisoner does not fairly present a claim to the

state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised.  *Id*. at 32.

The record demonstrates that Granger has presented to this court, under a broad reading, five claims, only one of which is arguably exhausted.  Specifically, affording Granger every benefit, his first claim to this court, insufficient evidence to support his conviction due the inconsistent testimony at trial, was exhausted in the state courts.  Granger raised the issue on direct appeal and to the Louisiana Supreme Court.  The last reasoned decision on the issue from the Louisiana Fifth Circuit indicates that the claim was without merit.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).  This claim is exhausted.

Included in Granger's third claim to this Court are his arguments that the police reports of his prior criminal activity were false and the trial testimony related thereto was false or inadmissible hearsay.  These claims were also raised on direct appeal to the Louisiana Fifth Circuit and were found to be in procedural default for lack of a contemporaneous objection under La. Code Crim. P. art. 841.  Under a broad reading, the claims were also raised to the Louisiana Supreme Court and relief was denied there presumably for the reasons indicated by the appellate court.  *Ylst*, 501 U.S. at 802.  This claim is exhausted.

Granger raises in his second, third and fourth claims to this Court new arguments in support of his claims that do not appear to have been specifically raised to the state courts.  Granger argues here that the State engaged in an illegal prosecution, there was no probable cause for the complaint against him or for the police to enter the victim's residence, the state courts wrongfully denied him

relief from the errors in his prosecution, and he was denied due process and equal protection of the laws as a foreign national.  These new theories or claims are not exhausted where they have not been presented to any of the state courts in a procedurally proper manner before being raised to this federal court.

Granger has also raised arguments in his second, third, and fourth claims that the State engaged in an illegal prosecution, the prosecutor and trial court were biased, his counsel provided ineffective assistance for failure to challenge the false documents, and the trial court lacked jurisdiction to conduct a trial over a foreign national.  These claims, perhaps in different phraseology, were listed by Granger in his direct appeal.  The Louisiana Fifth Circuit, however, found that the arguments or claims had not been briefed and were deemed abandoned pursuant to La. App. Rule 2-12.4.  The Court also noted in the alternative that the ineffective assistance of counsel could be more appropriately addressed on post-conviction relief.  This was the last reasoned decision on these issues.  *Ylst.*, 501 U.S. at 802.

Based on the appellate court's finding that these claims were abandoned, the state courts did not have the opportunity to adjudicate the claims on the merits.  The record also does not contain any indication that Granger has taken the appellate court's suggestion to pursue other post-conviction relief.  As discussed above, "[a] claim is not exhausted unless the habeas petitioner provides the highest state court with a 'fair opportunity to pass upon the claim.'"  *Morace v. Cain*, 193 F.3d 517, 1999 WL 706167, at *1 (5th Cir. Aug. 20, 1999) (Table, Text in Westlaw) (quoting *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999)).  Therefore, although Granger may have presented the arguments and claims to the Louisiana Fifth Circuit and the Louisiana Supreme Court, he did not do so in a procedurally correct manner or in a manner that would afford the state courts

14

a fair opportunity to consider the merits of his claims. "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). These claims are not exhausted. *Morace*, 1999 WL 706167, at *1.

The record discloses no good cause for Granger's failure to properly and fully exhaust each of his claims, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (dismissal is appropriate where no good cause is shown for the failure to exhaust). He submitted his federal petition for filing long before his direct appeal could be addressed. Furthermore, he has plenty of time to return to the state courts to properly and completely present his claims for review. With diligent action, he also would preserve more than enough time and have ample opportunity to return to this Court in a timely manner upon completion of exhaustion.

For these reasons, Granger also would not be entitled to a stay of these proceedings should one be requested as there has been no showing of good cause to provide that extraordinary relief. The Supreme Court has held that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioner. *Rhines*, 544 U.S. at 278. The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," (emphasis added), and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. *Id.* at 277; *see also Pliler v. Ford*, 542 U.S. 225, 233 (2004). Granger has not attempted to complete exhaustion and has not demonstrated any good cause for his failure to do so. Based on this record, no stay is warranted.

Granger has presented this Court with a "mixed petition," which includes both exhausted and unexhausted claims, and it is subject to dismissal for that reason. *See Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420). The Supreme Court has long required that a mixed petition like this one be dismissed without prejudice to allow for complete exhaustion, unless Granger amends his petition to dismiss or exclude the unexhausted claims and proceed with only the exhausted claims. *Pliler*, 542 U.S. at 233 (citing *Rose*, 455 U.S. at 510).

Therefore, having found no good cause for his failure to exhaust, this petition should be dismissed without prejudice to require Granger to exhaust available state court remedies as to all of his claims, unless he amends or resubmits this habeas petition to present only exhausted claims. *Id.* at 233.

## V.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Clevern Granger's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[28]

New Orleans, Louisiana, this 25th day of July, 2013.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[28]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.